UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

| | |
|---|---|
| HICKORY SPRINGS ) | |
| MANUFACTURING COMPANY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | NO. 3:04 CV 637 JTM |
| ) | |
| LIPPERT COMPONENTS, INC., ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION

This matter is before the court on Plaintiff Hickory Springs Manufacturing Company's ("HSMC") objections to Magistrate Judge Christopher A. Nuechterlein's September 1, 2005, report and recommendation recommending a denial of HSMC's motion requesting a preliminary injunction. For the reasons stated below, the court overrules HSMC's objections and, in accordance with Judge Nuechterlein's report and recommendation, denies HSMC's request for a preliminary injunction.

HSMC designs and manufactures component parts of recreational vehicles ("RVs"), e.g., motor homes, campers, vans, etc. HSMC is the owner of U.S. Patent No. 6,082,751 (the "'751 patent"), which is for a retractable and extendable stair-step structure which allows persons to easily enter and alight from RVs, which typically have doors higher than ground level. The mechanism that allows the steps to extend for use (and to retract for storage when not in use, for example, when the RV is in motion) is a pivoting, parallelogram linkage that results in the parties' descriptive name for the structure, "scissors step," which term the court will also use for easy reference.

Significantly, the scissors step was a great improvement over prior designs which used a rivet sliding in a track and which tended to jam easily.

HSMC brought this action alleging that Lippert Components, Inc. ("LCI"), is wilfully infringing the '751 patent by making, using and/or selling a scissors step covered by one or more claims in the '751 patent, and inducing others to infringe the patent by manufacturing those step structures. HSMC seeks declaratory relief, damages and a permanent injunction. Six months after filing its complaint, HSMC moved for a preliminary injunction.

A district court judge may "designate a magistrate judge to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by the judge of the court, of any motion . . . ." 28 U.S.C. § 636(b)(1)(B). Pursuant to this statutory authorization, the matter was referred to Judge Nuechterlein, who conducted an evidentiary hearing, and then entered his written report containing proposed findings of fact, conclusions of law and recommendation that HSMC's motion for a preliminary injunction be denied.

HSMC filed timely objections. If a party objects to a magistrate judge's proposed findings of fact and recommendations, the party must serve written objections and the district court judge who referred the matter to the magistrate shall review the portions objected to applying a *de novo* standard. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b).

A movant seeking a preliminary injunction has the burden of establishing: 1) a likelihood of success on the merits, 2) that the movant has no adequate remedy at law, and 3) that the movant will suffer irreparable harm if the preliminary injunction is not

2

granted. *AM General Corp. v. Daimler Chrysler Corp.*, 311 F.3d 796, 803 (7th Cir. 2002); *Eli Lilly & Co. v. Natural Answers, Inc.*, 233 F.3d 456, 461 (7th Cir. 2000). If the movant meets the above burden, then the court must consider the potential irreparable harm to the non-movant if the court were to grant the preliminary injunction, and whether the preliminary injunction is in the best interest of the public. *AM General Corp.*, 311 F.3d at 803-04. As Judge Nuechterlein noted, in a patent case a preliminary injunction is a drastic remedy that is not to be routinely granted. *Nat'l Steel Car, Ltd. v. Canadian Pacific Railway, Ltd.*, 357 F.3d 1319, 1324 (Fed. Cir. 2004).

Summarizing his analysis in one sentence, Judge Nuechterlein determined that HSMC had not made the showing necessary to obtain a preliminary injunction because it failed to establish a likelihood of success on the merits, as LCI's scissors step did not contain one of the features claimed in the '751 patent, a step tread mounted between end brackets. HSMC does not argue that the court needs to consider any additional evidence but instead identifies what it believes are specific errors made by Judge Nuechterlein in arriving at his legal conclusions based on the evidence. "Such precision guides the district court judge in making his de novo review, directing the judge to precisely those lines of reasoning the party finds objectionable. Specifying the basis of a litigant's objections will also likely improve a litigant's chances of convincing a district court judge that the magistrate judge's analysis was in error." *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 742 (7th Cir. 1999).

While HSMC objects generally to Judge Nuechterlein's conclusion that it did not demonstrate a likelihood of success on the merits, its specific objections are to the way

he arrived at that conclusion. Again summarizing his analysis quite briefly, Judge Nuechterlein noted that the "'bedrock principle'" of patent law is that the patent's claims define exactly what the patent holder has been given an exclusive right to, *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005), and therefore, in the context of a preliminary injunction, in order to determine likelihood of success on the merits, the court must engage in a preliminary construction of the language of the claims. In so doing, the words of the claims are to be given their ordinary and customary meaning as those terms would be understood by a person of ordinary skill in the art in question at the time of the invention. *Id*. at 1312-13.

Engaging in this preliminary construction of claim 1 of the '751 patent, Judge Nuechterlein focused on one phrase,[1] specifying that one of the elements comprising the patented scissors step is: "at least one step tread mounted between end brackets." As relevant here, HSMC's scissors step consists of a step tread, attached to separate end brackets, which are then attached to the extension linkage. LCI's step, on the other hand, has an integral flange on each end of the step tread (that is, the last few inches of each end of the tread are bent at a 90-degree angle forming a flange or lip), and that flange is then attached to the extension linkage.

Judge Nuechterlein posited that the "ultimate question this Court must decide is whether an integral flange fits within the description 'mounted between end brackets,'"

---

[1] The parties agreed that this was the only portion at issue. LCI's own expert admitted at the hearing that LCI's scissors step structure probably embodies all of the other elements of the claim.

and then answered that question in the negative. First, Judge Nuechterlein cited the hearing testimony of HSMC's expert, Dr. Stoll, who opined that a "bracket" is a support member that provides attachment locations, and that "mounted" means attached or connected to a support. In his opinion, a bracket is not defined by the method by which it is attached to a structure; therefore, LCI's integral flange is an end bracket, and LCI's scissors step does consist of a step tread mounted between end brackets.

Judge Nuechterlein observed, however, that this seemed to contradict Dr. Stoll's earlier deposition testimony, in which he stated that claim 1 of the patent required three separate features, a step tread, end brackets, and an extension bracket; that he had never before used the word "mounted" to describe an integral flange; and that he did not think that a mechanical engineer involved in the business of manufacturing steel steps would use the word "mounted" to describe an integral flange.

In this regard, Dr. Stoll's earlier deposition testimony appeared consistent with the hearing testimony of LCI's expert, Dr. Parks, who testified that the claim's plain language required separate end brackets that could be attached by bolting, riveting, welding, etc., and that an integral flange would not be a "bracket" within the ordinary meaning of that term in the phrase "step tread mounted between end brackets." Judge Nuechterlein further observed that Dr. Park's conclusion was supported by HSMC's specification within the patent for the preferred embodiment of the design, stating that the step tread should be fabricated as a flat rectangular metal plate "with integral front and back flanges and riveted end brackets." In other words, HSMC itself drew a distinction between integral flanges and brackets, and contemplated separate, riveted

5

end brackets which the step tread would be mounted between. Thus, Judge Nuechterlein concluded that by using an integral flange, LCI's scissors step did not consist of a step tread mounted between separate end brackets, and so HSMC had not provided sufficient evidence to establish a likelihood of success on its infringement/inducing infringement claim.

In its objections to this conclusion, HSMC argues that Judge Nuechterlein has made three significant errors. The first error, according to HSMC, was Judge Nuechterlein's "improper use of the patent specification in interpreting the claim language at issue in the '751 patent." HSMC Objection at 2. For support, HSMC cites the *Phillips* case. HSMC maintains that in *Phillips*, the "Federal Circuit again reminded trial courts not to import limitations from the specification into the claim language," because the purpose of the specification is only to provide an example embodiment of the invention, to instruct those with ordinary skill in the art as to one of many ways to make and use it. Id.

As an initial matter, HSMC has mischaracterized the import of *Phillips*, by ignoring the Federal Circuit's larger point, which is that the specification must play an important role in interpreting the claim. *Phillips* is replete with statements such as:

> The claims, of course, do not stand alone. Rather, they are part of "a fully integrated written instrument," *Markman* [*v. Westview Instruments, Inc.*,] 52 F.3d [967] at 978 [Fed. Cir. 1995], consisting principally of a specification that concludes with the claims. For that reason, claims 'must be read in view of the specification, of which they are a part." *Id.* at 979. As we stated in *Vitronics* [*Corp. v. Conceptronic, Inc.*, 90 F.3d 1576 (Fed. Cir. 1996)], the specification "is always highly relevant to the claim construction analysis. Usually, it is

> dispositive; it is the single best guide to the meaning of a disputed term." 90 F.3d at 1582.
>
> This court and its predecessors have long emphasized the importance of the specification in claim construction. In *Autogiro Co. of America v. United States*, 181 Ct. Cl. 55, 384 F.2d 391, 397-98 (1967), the Court of Claims characterized the specification as "a concordance for the claims," based on the statutory requirement that the specification "describe the manner and process of making and using" the patented invention. The Court of Customs and Patent Appeals made a similar point. *See In re Fout*, 675 F.2d 297, 300 (CCPA 1982) ("Claims must always be read in light of the specification. Here, the specification makes plain what the appellants did and did not invent ...."). Shortly after the creation of this court, Judge Rich wrote that "[t]he descriptive part of the specification aids in ascertaining the scope and meaning of the claims inasmuch as the words of the claims must be based on the description. The specification is, thus, the primary basis for construing the claims." *Standard Oil Co. v. Am. Cyanamid Co.*, 774 F.2d 448, 452 (Fed. Cir. 1985).

*Phillips*, 415 F.3d at 1315. Thus, HSMC's contention that it was improper for Judge Nuechterlein to use the specification to *interpret* the claim is completely meritless. "It is therefore entirely appropriate for a court, when conducting claim construction, to rely heavily on the written description for guidance as to the meaning of the claims." *Id.* at 1317.

What *Phillips* recognized—which point HSMC attempts to use too broadly—is that a distinction must be drawn between improperly importing a limitation from the specification into the claim, and using the specification to interpret the claim. *Id.* at 1323. *Phillips* also acknowledged that this distinction draws a fine line that can be difficult to apply. *Id*. However, this court disagrees with HSMC's fundamental assertion, that Judge Nuechterlein crossed that line here and imported a limitation found only in the

7

specification into the claim itself. Instead, Judge Nuechterlein's analysis focused on the plain meaning of the word "bracket" as used in the phrase in the claim "mounted between end brackets," essentially finding that both expert witnesses agreed that an integral flange was not a bracket. He then simply observed that the specification supported that interpretation. Thus, Judge Nuechterlein did not use the specification as the deciding factor, as HSMC asserts, and he did not import a limitation from the specification into the claim.

In reaching the conclusion that the expert testimony failed to support HSMC's contention that LCI's integral flange is a bracket, Judge Nuechterlein discounted the contrary testimony of HSMC's expert, Dr. Stoll, at the hearing, instead giving greater weight to his earlier deposition testimony. Judge Nuechterlein's reliance on that deposition testimony is what HSMC asserts was the second error in the analysis. HSMC argues that Dr. Stoll's deposition answers were in response to questions which improperly stated the patent using the words "mounted to" or "connected to" instead of the actual language from the claim, "mounted between." Put colloquially, HSMC is arguing that LCI's attorney unfairly put words in Dr. Stoll's mouth, and his deposition testimony as a whole shows that the phrase "mounted between end brackets" does not require a step tread that is mounted to a separate end bracket. Instead, just as he testified at the hearing, an integrated flange can function as, and therefore be, an end bracket.

The court believes this argument does a disservice to Judge Nuechterlein's analysis, and unduly emphasizes some portions of Dr. Stoll's deposition testimony at

the expense of others. The question that precipitated virtually the entire exchange at issue was: ". . . . one of them says 'step tread mounted between end brackets.' What does 'mounted' mean?" HSMC Objections, ex. 2, Stoll Dep. at 149, l. 7-10 (single quote marks added). Dr. Stoll answered: "It's structurally connected." Id. at l. 11.

Thus, the initial question did use the actual claim language, "mounted between," and it was HSMC's expert who brought the concept of "connected" into the discussion. Almost immediately thereafter, Dr. Stoll stated that "you're going to make me really regret having not looked this over that carefully," id. at l. 22-23, and that:

> We're stuck with what it says, and so it is what it is. I can't change it. It used the word mounted, but to me, mounted means it's part of, made a part of, attached to, connected to end brackets[.]

Id. at 151, l. 9-13. Dr. Stoll was then asked if that implied that "they" (the step tread and the end brackets) "start separate and then they come together," id. at l. 17-18, to which he replied:

> Or formed as. Formed as. Let's put that one in there, too, to cover all cases because in this case, the bracket is—the end bracket is actually a formed flange.

Id. at l. 23-25. He then however immediately admitted that in ordinary use a mechanical designer would "[p]robably not" use the word "mounted" to describe an integral flange. Id. at 152, l. 6.

Obviously, it is possible to conclude that Dr. Stoll was back-pedaling and shaping his testimony to serve his client's purposes, both at his deposition and even more so when he testified at the evidentiary hearing before Judge Nuechterlein. In

9

short, the undersigned does not believe that Judge Nuechterlein erred in reasoning that, as a whole, Dr. Stoll's testimony could be viewed as failing to support the contention that an integral flange is a bracket as that term is used in the phrase "mounted between end brackets." Thus, HSMC has not persuaded the court that Judge Nuechterlein improperly construed claim 1 of the '751 patent, or that the court should now arrive at a different construction—that is, that "mounted between end brackets" can mean either separate brackets or brackets that are integrally formed—or that Judge Nuechterlein erred in ultimately concluding that HSMC has not demonstrated a likelihood of success on the merits.

Finally, the third alleged error to which HSMC objects is Judge Nuechterlein's "cursory and tentative findings on the issue of irreparable harm." HSMC Objection at 5. HSMC argues that Judge Nuechterlein failed to consider substantial evidence it offered to support a finding of irreparable harm such as loss of market share, damage to customer relationships and harm to reputation.

Judge Nuechterlein actually made no finding on the issue of irreparable harm. He noted only in passing that, even if HSMC had been able to show a likelihood of success on the merits, he had "serious reservations that Plaintiff could establish irreparable harm" because the majority of testimony on the issue concerned lost sales, for which monetary damages would be adequate compensation. Judge Nuechterlein did not err by failing to consider the issue of irreparable harm, and the court need not

do so now.² As the undersigned agrees, based on his own *de novo* review conducted in light of HSMC's objections, that HSMC has not demonstrated a likelihood of success on the merits, the "analysis ends and the preliminary injunction should not be issued." *Adams v. City of Chicago*, 135 F.3d 1150, 1154 (7th Cir. 1998).

## CONCLUSION

For the foregoing reasons, the court **OVERRULES** HSMC's objections to Judge Nuechterlein's report and recommendation. As supplemented by this memorandum opinion, the court adopts Judge Nuechterlein's findings and reasoning as its own. Therefore, HSMC's motion for a preliminary injunction (DE # 18 ) is hereby **DENIED**.³

**SO ORDERED.**

ENTER: February 16, 2006

 s/ James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

---

² The undersigned does note, however, that like Judge Nuechterlein, he has reservations. For example, HSMC's having waited six months after filing its complaint to request a preliminary injunction might raise questions. *Ty, Inc. v. The Jones Group*, 237 F.3d 891, 902 (7th Cir. 2002).

³ The court notes that Judge Nuechterlein found that HSMC had voluntarily withdrawn its claim of infringement (for the purposes of preliminary injunctive relief) pertaining to claim 9 of the '751 patent, and that LCI had stopped manufacturing steps covered by a second infringement theory raised by HSMC, making the need for injunctive relief as to those issues moot. HSMC has not objected to those findings and conclusions, which are now incorporated in this decision denying the preliminary injunction.